IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

VARREL MITCHELL, SR.,

                Petitioner,          Civil Action No.
                                       9:13-CV-0705 (GLS/DEP)

      v.

NEW YORK STATE DIVISION
OF PAROLE,

                Respondent.

_____

APPEARANCES:                    OF COUNSEL:

FOR PETITIONER:

VARREL MITCHELL, SR., *Pro Se*
3562 HWY 44
Paulina, LA 70763

FOR RESPONDENT:

HON. ERIC T. SCHNEIDERMAN      ALYSON J. GILL, ESQ.
New York State Attorney General     Assistant Attorney General
120 Broadway
New York, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* petitioner Varrel Mitchell, Sr., a former New York State prison inmate who was convicted in 2003 of various crimes, has commenced this proceeding pursuant to 28 U.S.C. § 2254 seeking federal habeas review of his conviction. In his petition, Mitchell sets forth five separate grounds for granting habeas relief. Respondent has answered the petition, arguing that it should be dismissed on various grounds, including the merits. For the reasons set forth below, I recommend that the petition in this matter be denied and dismissed.

## I.     BACKGROUND

Petitioner and Jackie Curtis are the parents of twin girls, GM and BM, born on November 25, 2000.[1] Dkt. No. 8-6 at 47. At the times relevant to this case, petitioner and Curtis were not living together, and while the girls lived with Curtis, on occasion petitioner took them to spend the night with him at his residence. *Id.* at 47, 53. When GM was approximately five months old she became prone to crying. *Id.* at 50-51. Frustrated by her outbursts, in a couple of instances petitioner took only BM for visitation and left GM with Curtis. *Id.* at 51.

---

[1]      In accordance with the requirements of Rule 5.2(a)(3) of the Federal Rules of Civil Procedure, the infant victim in this case will be referred to using only her initials.

Petitioner picked the twins up at approximately 6:30 p.m. on the evening of Monday, August 20, 2001. Dkt. No. 8-6 at 56. When returning the twins on the following Wednesday morning, Curtis noticed that GM had a bump on her forehead, which petitioner explained by telling Curtis that the baby struck her head on a coffee table the night before. *Id.* at 58-59. On the same day, Curtis noticed that GM began to cry when she attempted to lift up or touch her legs. *Id.* at 61-62. In addition, when GM was placed in her walker, she would not straighten her legs. *Id.* The next day, Curtis took GM to see her pediatrician, Dr. Estrella Esquerra, believing that the baby might have an ear infection because she felt warm and was pulling at her ear. *Id.* at 63-64. During that visit, Curtis also asked the doctor to check GM's legs. *Id.* at 64-65. When Dr. Esquerra noticed that one of GM's legs was swollen and that GM would not allow her to touch the leg, she instructed Curtis to take GM to the hospital for x-rays. *Id.* at 64-67, 266-67.

The same day, Curtis took GM to the hospital, where the infant was treated by Dr. Deborah Bostic, the pediatrician on-call at the hospital. Dkt. No. 8-6 at 267, 307. Based upon her review of GM's x-rays, Dr. Bostic concluded that GM "had fractures of . . . both bones in both legs at the level of the ankles." *Id.* 310. Dr. Bostic, Dr. Esquerra, and Dr. John Waldman, a pediatric neurosurgeon employed at the hospital in which GM was treated,

testified at petitioner's trial that, in their opinion, it would take a considerable degree of force to cause the fractures disclosed in GM's x-rays and that it was unlikely an accident caused the injuries. *Id.* at 269, 294-95, 313. Following her examination of GM, Dr. Bostic notified the police, Child Protective Services, and Dr. Esquerra of her findings. *Id.* at 309.

After the Albany City Police Department was called, Gary Colfer, a patrolman with the department, was dispatched to the hospital. Dkt. No. 8-6 at 136. Officer Colfer met with Dr. Bostic, who reported that a nine-month old juvenile had appeared at the hospital with unusual injuries to her body, including two broken legs. *Id.* at 137. Dr. Bostic told Officer Colfer that the breaks were at odd angles and must have been the result of an unusual event or "traumatic blunt occurrence" and was therefore likely caused by someone. *Id.* at 137. Officer Colfer then interviewed Curtis, who informed him that petitioner, the infant's biological father, had taken GM on Monday and returned her on Wednesday. *Id.* at 139-40. The matter was then transferred to Albany Police Detective Thomas Kubisch, who arrived and was briefed by Officer Colfer. *Id.* at 141, 148.

Detective Kubisch was assigned as the lead investigator in the matter. Dkt. No. 8-6 at 141. After receiving Officer Colfer's report, Detective Kubisch spoke with Dr. Bostic, who informed him that GM had bilateral fractured legs

and an old brain injury. *Id.* at 148. Detective Kubisch then interviewed Curtis who advised him that petitioner took GM on Monday, August 20, 2001, and returned her on Wednesday, August 22, 2001. *Id.* at 149.

Detective Kubisch interviewed petitioner on August 27, 2001. Dkt. No. 8-6 at 151. During that interview, Mitchell admitted that, during the time GM was with him between August 20 and 22, 2001, he struck her on her thigh and banged her head on a coffee table. *Id.* at 156-58, 60. Petitioner also told Detective Kubisch that, in the past, he had hit GM numerous times after becoming angry and frustrated when she cried. *Id.* at 158. Petitioner also admitted to Detective Kubisch that he swung GM between April and May 2001, and, using a doll, and while being videotaped, he demonstrated for Detective Kubisch the manner in which she was swung. *Id.* at 159-60. Both Drs. Esquerra and Waldman were shown petitioner's videotaped demonstration. Dkt. No. 8-6 at 193-94, 255, 271, 288-89. Dr. Esquerra was "horrified" by the video. *Id.* at 193. Dr. Waldman explained at trial that swinging GM in the manner demonstrated by petitioner on the videotape could have caused bleeding on her brain and a serious risk of injury to her spinal cord and the juncture of her head and spine, and could even have been fatal. *Id.* at 289-90.

II.    PROCEDURAL HISTORY

    A.    State Court Proceedings

On May 14, 2002, an Albany County Grand Jury returned a

three-count indictment charging petitioner with second-degree assault,

first-degree reckless endangerment, and endangering the welfare of a child

in violation of New York Penal Law §§ 120.05(9), 120.25, and 260.10(1),

respectively.[2] Dkt. No. 8-2 at 29-31. As a result of a motion filed by

petitioner to suppress his oral and written statements provided to law

enforcement, the trial court conducted a suppression hearing on September

24, 2002 and November 8, 2002. Dkt. No. 8-6 at 490-652. Following the

hearing, County Court Judge Thomas A. Breslin issued an order, dated

January 29, 2003, denying petitioner's motion in all respects. Dkt. No. 8-1 at

2-6.

A jury trial was subsequently convened, beginning on June 16, 2003,

to address the charges against Mitchell. Dkt. No. 8-6 at 1-489. Petitioner

represented himself during the course of the trial, aided by the assistance of

---

[2]    Count 1 of the indictment charged assault in the second degree but contained
language that suggested petitioner was charged with attempted second-degree assault.
Dkt. No. 8-2 at 29. Characterizing the language regarding attempted assault as a
typographical error, at trial the assistant district attorney moved for and was granted
permission to eliminate any reference to "attempt." Dkt. No. 8-6 at 378-79. In its decision
addressing petitioner's appeal, the New York State Supreme Court, Appellate Division
for the Third Judicial Department ("Appellate Division") found no fault with the trial court's
decision to permit the amendment. *See People v. Mitchell*, 94 A.D.3d 1252, 1253 (3d
Dep't 2012).

stand-by counsel. *See, e.g., id.* at 5-6. On June 19, 2003, the jury convicted
Mitchell on all three counts. *Id.* at 485-87. He was subsequently sentenced
on August 14, 2003, as a second felony offender, to a determinate period of
incarceration of seven years on the assault conviction, an indeterminate
three-and-one-half-to-seven-year term of imprisonment for reckless
endangerment, to run consecutively with the assault sentence, and an
additional one-year concurrent sentence on the endangering conviction.[3]
Dkt. No. 8-2 at 108-22.

Once again representing himself, petitioner appealed his conviction to
the Appellate Division arguing that (1) the trial court erred in denying a
motion attacking the validity of the indictment as failing to allege the
essential elements of the crimes charged; (2) the indictment should have
been dismissed based upon errors committed during the grand jury
proceedings; (3) the evidence adduced at trial was legally insufficient, and
the jury's verdict was against the weight of the evidence; (4) he was denied
a fair trial and due process at trial due to the prosecutor's errors; and (5) the
trial court erred in failing to suppress his statements made to law
enforcement. Dkt. No. 8-2 at 2-26. Petitioner's conviction was affirmed by

---

[3]     Petitioner was later resentenced on October 29, 2003. Dkt. No. 8-2 at 123-28.
The resentencing did not affect the periods of incarceration imposed, but instead
was intended to rectify a typographical error concerning the designation of one of the
offenses and to clarify the extent of post-release supervision imposed. *Id.*

the Appellate Division in a decision issued on April 12, 2012.[4] *People v. Mitchell*, 94 A.D.3d 1252 (3d Dep't 2012). The Appellate Division first concluded that the indictment was sufficient because all three counts adequately set forth the charges against petitioner. *Mitchell*, 94 A.D.3d at 1252-53. The court next rejected petitioner's arguments concerning the integrity of the grand jury process, and then concluded that the trial court did not err in finding that petitioner's statements to law enforcement officers were voluntary. *Id.* at 1253. After surveying the evidence adduced at trial, the Appellate Division found that the verdict was not against the weight of the evidence. *Id.* at 1253-55. In a footnote, the Appellate Division observed that petitioner did not preserve his legal sufficiency argument because he failed to make a motion to dismiss after the prosecution rested. *Id.* at 1253 n.1. The court nonetheless evaluated the sufficiency of the evidence as part of its review addressing the weight of the evidence at trial. *Id.* Petitioner's remaining contentions were dispensed with by the court's statement that "[d]efendant's remaining contentions have been considered and found lacking in merit." *Id.* at 1255. Petitioner's request for leave to appeal the Appellate Division's decision to the New York Court of Appeals was

---

[4]    No explanation has been offered for the unusually inordinate amount of time that elapsed between the date of petitioner's conviction and the Appellate Division's decision on appeal.

subsequently denied on June 14, 2012. *People v. Mitchell*, 19 N.Y.3d 964 (2012). Petitioner neither sought *certiorari* review by the United States Supreme Court nor mounted any collateral state court challenges to his conviction. Dkt. No. 1 at 2.

B.      Proceedings in This Court

Mitchell commenced this proceeding on June 19, 2013.[5] Dkt. No. 1. Mitchell's petition sets forth five grounds for habeas relief, arguing that (1) the trial court erred in refusing to dismiss the indictment against him, which was jurisdictionally defective for failing to allege all of the essential elements of the crimes charged; (2) the indictment against him was the product of infected grand jury proceedings, resulting in a denial of due process; (3) the jury's verdict was not supported by sufficient evidence and was against the weight of the evidence adduced at trial; (4) he was deprived of a fair trial by the prosecutor's errors; and (5) the trial court erred in denying the motion to suppress his statements to law enforcement. *Id.* at 4-23.

On September 24, 2013, respondent submitted an answer to the petition, as well as a memorandum of law and relevant state court records.

---

[5]      In his petition, Mitchell named the People of the State of New York, the Attorney General of the State of New York, and "Hon. Schermerhorn" as respondents. Dkt. No. 1 at 1. In an initial order approving Mitchell's petition for filing, issued on June 26, 2013, I directed the clerk to substitute the New York State Division of Parole, which currently supervises petitioner, as the named respondent. Dkt. No. 3 at 2.

Dkt. Nos. 6-8. Those filings were followed by the submission of a reply memorandum by Mitchell on October 7, 2013. Dkt. No. 9.

The petition in this matter, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61 (2d Cir. 2007) (Sotomayor, J.). The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be

given the benefit of the doubt.'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 131 S. Ct. at 1398. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.    <u>Defective Indictment</u>

Petitioner first contends, as he did in his state court appeal, that the indictment against him was defective because it did not allege certain elements of the crimes charged. Dkt. No. 1 at 4-6. Respondent maintains that this claim is not cognizable on federal habeas review. Dkt. No. 6-1 at 22-24.

A defect in a state court indictment can support a federal habeas claim only if the indictment falls below basic constitutional standards. *Beverly v. Walker*, 899 F. Supp. 900, 909 (N.D.N.Y. 1995) (Scullin, J.). An indictment is constitutionally adequate "when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (citing *Russell v. United States*, 369 U.S. 749, 763-64 (1962)); *accord*, *DeVonish v. Keane*, 19 F.3d 107, 108 (2d Cir. 1994). Generally, an indictment that tracks the language of the applicable criminal statutes and states the time and place "in approximate terms" of the alleged crime will satisfy due process. *Stavroulakis*, 952 F.2d at 693; *accord, DeVonish*, 19 F.3d at 749.

In this case, the indictment returned against petitioner meets this

modest standard. Count one of the indictment charges as follows:

> Assault in the Second Degree, in violation of Section 120.05(9) of the Penal Law of the State of new [sic] York, a Class D Felony, in that the defendant, sometime between August 20, 2001 and August 22, 2001, at 31 Third Ave., in the City of Albany, County of Albany, State of New York, did, being eighteen years old or more, with intent to cause physical injury to a person less than seven years old, ~~attempt to~~ cause such injury to such person, *to wit: at the aforesaid date, time and place, the defendant being eighteen years old or more (D.O.B. 9/29/58) did ~~attempt to~~ with intentio~~nally~~ to cause physical injury to one* [*GM*] *whose date of birth is 11/25/00, did cause such injury by fracturing both her left and right tibia and fibula.*

Dkt. No. 8-2 at 29 (emphasis and alterations in original). As noted above, this count originally included language regarding attempted assault. Dkt. No. 8-2 at 29. At trial, however, the prosecutor moved to amend the indictment to eliminate the references to an attempted assault. Dkt. No. 8-6 at 378-82. That motion was granted based upon the trial court's finding that the amendment rectified a typographical error and was properly sought pursuant to New York Criminal Procedure Law § 200.70. *Id.* In rejecting petitioner's argument on appeal that the amendment was improper, the Appellate Division noted that it was clear from the record that the grand jury considered and voted to accuse petitioner of assault in the second degree, and not an attempted assault. *Mitchell*, 94 A.D.3d at 1253. Notwithstanding

13

the typographical error contained in this count of the indictment, petitioner

was on notice of the charges alleged in light of (1) the inclusion of all of the

essential elements of second-degree assault under New York Penal Law §

120.05(9),[6] (2) the identification of the victim, (3) the specification of the

location of where the crime is alleged to have occurred, and (4) the

allegation that the crime was committed between August 20, 2001 and

August 22, 2001. Moreover, the Appellate Division's decision regarding the

County Court's ruling on the motion to amend the indictment was not

contrary to any Supreme Court precedent.

Count two of the indictment charges as follows:

> Reckless Endangerment in the First Degree, in
> violation of Section 120.25 of the Penal Law of the
> State of New York, a Class D Felony, in that
> defendant, sometime between April 1, 2001 and
> May 31, 2001, at 31 Third Ave., in the City of Albany,
> County of Albany, State of New York, did under
> circumstances evincing a depraved indifference to
> human life, recklessly engage in conduct which
> created a grave risk of death to another person to
> wit: *at the aforesaid date, time and place the
> defendant did evince a depraved indifference to
> human life by recklessly creating a grave risk of
> death to one* [*GM*] *(DOB 11/25/00) by grabbing her
> by the legs and swinging her in a pendulum motion
> for ten to fifteen minutes.*

---

[6]    That provision states that a "person is guilty of assault in the second degree
when. . . [b]eing eighteen years old or more and with intent to cause physical injury to a
person less than eleven years old, the defendant recklessly causes serious physical
injury to such person[.]" N.Y. Penal Law § 120.05(9).

[Dkt. No. 8-2 at 30](#) (emphasis in original). Once again, this charge tracks the statutory language of New York Penal Law § 120.25, which provides, in relevant part, that "[a] person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." N.Y. Penal Law § 120.25. In addition, this count states approximately when the crime occurred, specifies a location, identifies the victim, and describes the conduct that gave rise to the offense. [Dkt. No. 8-2 at 30](#). Due process was therefore satisfied in connection with this count, as well.

Count three of the indictment charges petitioner with endangering the welfare of a child, alleging as follows:

> Endangering the Welfare of a Child, in violation of Section 260.10(1) of the Penal Law of the State of New York, a Class A Misdemeanor, in that the defendants, between August 20, 2001 and August 22, 2001, at 31 Third Ave., in the City of Albany, County of Albany, State of New York, did knowingly act in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or direct or authorize such child to engage in an occupation involving a substantial risk of danger to his life or health, *to wit: during the aforesaid date, time and place, the defendants* [sic]*, did subject a child who is less than seventeen years old and whose name is* [*GM*] *(D.O.B. 11/25/00), to a substantial risk of danger to her life and health by*

> *striking her about the lower legs, buttocks, and thighs.*

Dkt. No. 8-2 at 31. Once again, the language of the applicable statute, New York Penal Law § 260.10(1) is tracked almost verbatim,[7] an approximate date and location of the criminal offense is stated, the victim is identified, and the basic essential factual allegations associated with the charge are set forth. Count three therefore similarly satisfies the requirements of due process and adequately apprised petitioner of the charges against him.

In sum, the first ground of Mitchell's petition is cognizable on federal habeas review only to the limited extent of inquiring as to whether basic requirements of due process were satisfied. Because I find that petitioner was afforded due process with respect to the contents of the indictment and the state court rulings below were not contrary to any Supreme Court precedent, I recommend this ground be denied.[8]

---

[7]     That statute provides as follows:

> A person is guilty of endangering the welfare of a child when. . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health[.]

N.Y. Penal Law § 260.10(1).

[8]     Even assuming the state court indictment was defective, "a petit jury's guilty verdict transforms any defect in the grand jury proceedings into harmless error by establishing both that there was probable cause to indict the defendant and that the

16

C.    Defect in Grand Jury Proceedings

In his second ground, Mitchell asserts that there were several defects in the grand jury proceedings leading to his indictment. Dkt. No. 1 at 7-16. Specifically, he alleges that (1) the grand jury was not provided with a copy of his proposed witness list, (2) unauthorized persons were present in the grand jury session, (3) the prosecutor suppressed exculpatory evidence during the grand jury proceedings; and (4) the prosecutor knowingly offered perjured testimony to the grand jury. *Id.* Respondent counters by arguing that none of these claims provide a basis for overturning petitioner's conviction on habeas review. Dkt. No. 6-1 at 25-26.

In this proceeding, the court is tasked with determining whether petitioner's conviction resulted from a "violation of the Constitution, laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Although petitioner has a right under New York law to an indictment by a grand jury, *People v. Iannone*, 45 N.Y.2d 589, 594 (1978), an individual's right under the Fifth Amendment to a grand jury indictment has not been incorporated against the states through the Fourteenth Amendment. *LanFranco v. Murray*, 313 F.3d 112,

---

defendant was actually guilty beyond a reasonable doubt." *Beverly*, 899 F. Supp. at 908 (citing *United States v. Mechanik*, 475 U.S. 66, 70 (1986)). Accordingly, to the extent that the indictment was defective, the jury's verdict finding petitioner guilty on all three counts renders the defect harmless.

118-19 (2d Cir. 2002) (citing *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972)). Accordingly, the defects now alleged in connection with petitioner's grand jury proceedings are not cognizable in a petition for writ of habeas corpus. *Lopez v. Riley*, 865 F.2d 30, 32-33 (2d Cir. 1989). In any event, the jury's guilty verdict following petitioner's trial rendered any defects that occurred in connection with the grand jury proceedings harmless, definitively establishing both the existence of probable cause to indict and that petitioner was actually guilty beyond a reasonable doubt of the crimes charged in the indictment. *Lopez*, 865 F.2d at 32 (citing *Mechanik*, 475 U.S. at 70). For these reasons, I recommend that petitioner's second ground for habeas relief be denied.

### D.  Sufficiency/Weight of the Evidence

Petitioner next challenges both the sufficiency and weight of the evidence adduced at trial. Dkt. No. 1 at 16-18. Respondent contends that this argument does not present a federal claim, is foreclosed based upon an independent and adequate state ground, and, in any event, is without merit because the evidence at trial was adequate to support the jury's verdict.

## 1. Sufficiency of the Evidence

The Appellate Division rejected petitioner's contention on appeal regarding the sufficiency of the evidence because he did not preserve that argument for review by "declin[ing] County Court's offer to make a motion to dismiss after the People rested[.]" *Mitchell*, 94 A.D.3d at 1253 n.1. In light of this conclusion, respondent contends that petitioner's sufficiency of the evidence claim now raised in his habeas petition is foreclosed. Dkt. No. 6-1 at 26-28.

As a matter both of comity, and in keeping with the principles of federalism, a federal court ordinarily will not review a federal claim presented in a habeas petition if it has been rejected by the state courts on a ground that is both "independent and adequate[.]" *Coleman v. Thompson*, 501 U.S. 722, 736 (1991); *accord, Brown v. Greiner*, 409 F.3d 523, 532 (2d Cir. 2005). While a procedural forfeiture is typically the product of a failure to comply with a state's requirements regarding timely presentment of issues to a court, the question of whether a default discerned by a state court is sufficiently adequate and independent to preclude federal habeas review is governed by federal law. *Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006).

When presented with this issue, the court examines both whether the state court's ruling is wholly independent of any federal question presented, and whether the claim has been rejected based upon an adequate ground – that is, whether the rule relied upon by the state court is firmly established and regularly followed. *Downs v. Lape*, 657 F.3d 97, 101-02 (2d Cir. 2011). The habeas court's function is "to determine only whether the state ruling falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct." *Downs*, 657 F.3d at 101 (citing *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011)).

Addressing the issue of adequacy, the Second Circuit has observed that

> a procedural bar will be deemed adequate only if it is based on a rule that is firmly established and regularly followed by the state in question. When a federal court finds that the rule is inadequate under this test the rule should not operate to bar federal review. Nonetheless, the principles of comity that drive the doctrine counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law.

*Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (citations and quotation marks omitted); *accord, Monroe*, 433 F.3d at 241. As may be self-evident, a state court determination is sufficiently independent if it is divorced from and bears no relation to the merits of the federal law claim presented. *See*

*Coleman*, 501 U.S. at 729 ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question[.]"). When addressing the question of procedural forfeiture, a court should presume that there is no independent and adequate state ground for a state court decision when the decision "'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion[.]'" *Coleman*, 501 U.S. at 733 (quoting *Mich. v. Long*, 463 U.S. 1032, 1040-41 (1983)); *accord, Brown*, 409 F.3d at 531.

For a federal court to deny habeas review based on the independent and adequate state ground doctrine, it must be clear that the state court actually relied upon the procedural bar as the basis for its disposition of the claim. *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 262 (1991); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000). In a case where both procedural and substantive arguments have been advanced by the parties but no opinion is issued by the state court explaining its rejection of a claim, a federal court may properly assume that the state court based its decision on state procedural grounds absent good reason to believe the state court's silence represents a decision to deny the claim on its merits.

*Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993). In instances where a state court has expressly found both a failure to preserve the argument for appellate review and alternatively or "in any event" that the argument lacks merit, the procedural bar applies. *Fama*, 235 F.3d at 810 n.4. If there is ambiguity, however, as in "when a state court uses language such as the defendant's remaining contentions are either unpreserved for appellate review or without merit, the validity of the claim is preserved and is subject to federal review." *Fama*, 235 F.3d at 810 (quotation marks and alterations omitted).

In this instance, the Appellate Division applied a well-recognized, firmly established, and regularly followed rule in New York in denying petitioner's claim regarding the sufficiency of the evidence. *See Gordon v. Graham*, No. 09-CV-1368, 2012 WL 293620, at *4 (E.D.N.Y. Jan. 31, 2012) (finding Appellate Division's reliance on petitioner's failure to raise the sufficiency claim before the trial court to be an "independent and adequate state procedural ground preclud[ing] federal habeas review of [the] claim"); *see also Rustici v. Philips*, 497 F. Supp. 2d 452, 482 (E.D.N.Y. 2007) (citing *Gonzalez v. Sullivan*, 934 F.2d 419, 421 (2d Cir. 1991)).[9] Accordingly, this

---

[9]  Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

court's review of that claim is foreclosed absent a finding of either (1) cause for petitioner's default and actual prejudice, or (2) that a failure to review the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *accord, Brown v. Rivera*, No. 05-CV-1478, 2008 WL 2559372, at *2 (N.D.N.Y. June 23, 2008) (Treece, M.J.). Petitioner in this case, however, does not contend or otherwise provided a basis for finding that he is justified in failing to raise this claim before the trial court or that a failure to grant his request for a writ of habeas corpus would result in a miscarriage of justice. Because there is nothing before me to suggest that either of those exceptions apply, I recommend that petitioner's sufficiency of the evidence claim be denied on this procedural basis.[10]

## 2.   Weight of the Evidence

Turning to petitioner's claim that the jury's verdict was against the weight of the evidence adduced at trial, although it is a statutory claim that need not be preserved for appellate review, N.Y. C.P.L. § 470.15(5), it is not

---

[10]     Even though the Appellate Division ruled in the alternative on the merits of petitioner's legal insufficiency claim, the procedural bar still precludes habeas review. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." (emphasis in orginal)); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

cognizable on habeas review because it is grounded in New York's criminal procedure statute. N.Y. C.P.L. § 470.15(5); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). Accordingly, I recommend that the court deny petitioner's weight of the evidence claim on this basis.

### E.     Prosecutorial Misconduct

In the fourth ground of his petition, petitioner asserts that his due process rights were violated through prosecutorial misconduct. [Dkt. No. 1 at 18-21](). Specifically, Mitchell alleges that the prosecutor violated his right to a fair trial by successfully seeking suppression of evidence suggesting that GM suffered her injuries on August 23, 2001, when the infant was no longer in his custody, rather than between August 20 and 22, 2001, the dates charged in the indictment. *Id.* at 19-20. Petitioner further argues that the prosecution knowingly permitted perjured testimony to be given at trial, claiming that there was no evidence that he swung GM. *Id.* at 20-21.

The precise nature of petitioner's first argument is unclear. It appears he may be arguing that he was deprived of a fair trial and due process by the prosecutor's conduct.[11] In any event, a careful review of the trial transcript

---

[11]     Respondent has construed this ground as asserting a violation of the prosecution's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). A review of the trial transcript in this case, however, reveals that no *Brady* violation occurred. It is clear

does not reveal any basis to conclude that the prosecutors in this case deprived petitioner of due process. There is no record that the prosecutors attempted to "suppress" any evidence with respect to the date GM's legs were injured. The indictment accused petitioner of assaulting GM between August 20 and 22, 2001, and Curtis testified at trial that GM was healthy when petitioner picked her up on August 20, but was injured on the morning of August 22, when petitioner returned her. Dkt. No. 8-2 at 29; Dkt. No. 8-6 at 67-68, 83. Although petitioner contends that "[r]espondents knew [GM] was in fact injured on August 23, 2001," there is no evidence to support this allegation and this portion of the petition should be denied as meritless.

With respect to petitioner's claim that the prosecutor at trial offered perjured testimony, it is true that "a prosecutor's use of false testimony can result in a denial of a *habeas* petitioner's right to due process." *Black v. Rock*, 103 F. Supp. 3d 305, 318 (E.D.N.Y. 2015); *see also Napue v. People of the State of Ill.*, 360 U.S. 264, 269 (1959). The threshold question, however, is whether the evidence presented was false. *Napue*, 360 U.S. at 269; *accord*, *Black*, 103 F. Supp. 3d at 318. In this instance, petitioner contends that the "perjured" testimony offered by the prosecution was that

---

from Mitchell's own petition that he was aware of the evidence that he claims was unlawfully suppressed. Consequently, it was not withheld from him by the prosecution, and thus the requirements of *Brady* are not implicated.

petitioner swung GM. Dkt. No. 1 at 20-21. This contention is belied not only by petitioner's oral and written admissions provided to Detective Kubisch, but also by the video recording of petitioner demonstrating how he swung his daughter when she was an infant. Accordingly, because there is no basis in the record to find that the testimony regarding petitioner swinging GM was false, I recommend this portion of the petition be denied.

### F.    Suppression of Petitioner's Statements

Petitioner's final ground for seeking habeas review is based on his allegation that the trial court erred in denying his application to suppress statements made by him to law enforcement officers upon being questioned concerning GM's injuries. Dkt. No. 1 at 22-23. Respondent asserts that the Appellate Division's conclusion that petitioner's rights were not violated was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Dkt. No. 6-1 at 34-37.

When reviewing a habeas petition, "[t]he factual findings of the New York Courts are presumed to be correct." *Green v. Scully*, 850 F.2d 894, 900 (2d Cir.1988). This presumption, however, "refers to historical facts, that is, recitals of external events and the credibility of the witnesses narrating them." *Green*, 850 F.2d at 900. If "the material facts were not adequately developed at the State court hearing or the District Court finds

that the factual determination is not fairly supported by the record," the presumption of correctness is set aside. *Pagan v. Keane*, 984 F.2d 61, 64 (2d Cir.1993) (citations and quotation marks omitted).

"The police may use a defendant's confession [obtained during a custodial interrogation] without transgressing his Fifth Amendment right only when the decision to confess is the defendant's free choice." *United States v. Anderson*, 929 F.2d 96, 98 (2d Cir.1991). The prosecution bears the burden of demonstrating by a preponderance of the evidence that a confession was voluntary. *Anderson*, 929 F.2d at 99. "[T]he ultimate issue of voluntariness is a legal question requiring independent federal determination." *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991) (quotation marks omitted). "No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances." *Green*, 850 F.2d at 901. The Second Circuit has said that factors to be considered in determining whether a confession is voluntary include (1) the characteristics of the accused, such as his experience, background, and education; (2) the conditions of the interrogation; and (3) the conduct of law enforcement officials, especially whether there was physical abuse, the period of restraint in handcuffs, and use of

psychologically coercive tactics. *Id.* at 901-02. "[S]ubsidiary questions, such as the length and circumstances of [an] interrogation," or whether "the police engaged in the intimidation tactics alleged by the defendant," are entitled to the presumption of correctness, *Miller v. Fenton*, 474 U.S. 104, 112, 117 (1985).

In this case, after conducting a suppression hearing to address the issues, County Court Judge Thomas A. Breslin issued a decision in which he found that Detective Kubisch spoke with petitioner at his place of employment on August 27, 2001, and petitioner told him that he would not be off work until later that evening. *Id.* at 3-4. The detective then left his card and asked petitioner to make contact. *Id.* at 4.

According to the trial court, following the encounter at petitioner's workplace, Detective Kubisch returned to his office, where petitioner appeared shortly thereafter. Dkt. No. 8-1 at 4. The two went into an interview room where Detective Kubisch immediately read petitioner his full *Miranda*[12] warnings from a printed card. *Id.* Petitioner indicated that he understood the rights recited to him, and acknowledged as much by signing the *Miranda* warning card. *Id.* During the course of his interview with Detective Kubisch, petitioner made various admissions concerning his

---

[12]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

actions toward GM. *Id.* at 4-5. At one point petitioner agreed to demonstrate how he swung the child and permitted the demonstration to be videotaped. *Id.* at 5.

On the next evening, August 28, 2001, Detective Kubisch went to petitioner's residence, where a further conversation regarding GM's injuries ensued. Dkt. No. 8-1 at 5. Petitioner made additional admissions during that conversation, including that he had struck GM at the relevant times. *Id.*

Based upon these factual findings, Judge Breslin concluded that the petitioner's statements were not the result of a custodial interrogation and were voluntarily made. Dkt. No. 8-1 at 5-6. That determination was upheld by the Appellate Division, which noted that, while petitioner argued that his admissions were coerced and that the written statement and video recording were "fake," he did not testify or offer evidence to support those claims during the suppression hearing. *Mitchell*, 94 A.D.3d at 1253.

Having carefully reviewed the record, I conclude that the factual findings rendered by Judge Breslin and affirmed by the Appellate Division are fully supported by the evidence. At the suppression hearing before Judge Breslin, Detective Kubisch testified that on August 27, 2001, after returning to his office following his initial contact with petitioner, petitioner appeared at the station voluntarily. Dkt. No. 8-6 at 542-43. Detective

Kubisch further testified that, after petitioner was read the *Miranda* warning card and petitioner signed it, petitioner admitted to hitting GM on Tuesday, August 21, 2001, in the lower leg, near her calf because he was frustrated with her crying. *Id.* at 547. Petitioner demonstrated for Detective Kubisch how he struck his daughter, as well as how he swung her when she was approximately four months old. *Id.* at 547-48, 551, 555. Petitioner also worked with Detective Kubisch to create a written statement, and petitioner thereafter read the statement and signed it. *Id.* at 550-54. At the end of the interview with Detective Kubisch on August 27, 2001, petitioner left the police department of his own volition, and he was not placed under arrest until months later. *Id.* at 558, 562.

In light of the record evidence, there is no basis to conclude that petitioner's statements to law enforcement officers were not voluntary or that the state courts' determinations were otherwise contrary to or an unreasonable application of any Supreme Court precedent. Accordingly, I recommend that this ground also be denied.

G.    Certificate of Appealability

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P.

22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[13] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted). In this instance, I conclude that petitioner has not made a substantial showing of the denial of a constitutional right, and therefore recommend against the issuance of a COA.

---

[13]    A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

IV.    SUMMARY AND RECOMMENDATION

The petition in this matter raises five grounds for habeas relief.
Several of those grounds present claims that are not cognizable in a federal
habeas review proceeding. The remaining claims that are available to the
petitioner in this proceeding lack merit, and the state courts' determinations
are neither contrary to nor an unreasonable application of clearly
established Supreme Court precedent. Accordingly, it is hereby respectfully

RECOMMENDED that the petition in this matter be DENIED and
DISMISSED in all respects; and it is further

RECOMMENDED, based upon my finding that Mitchell has not made
a "substantial showing of the denial of a constitutional right" pursuant to 28
U.S.C. § 2253(c)(2), that a certificate of appealability not issue with respect
to any of the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge
written objections to the foregoing report. Such objections must be filed with
the clerk of the court within FOURTEEN days of service of this report.
FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE
APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72;
*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this court's

local rules.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:      May 3, 2016
            Syracuse, New York

2012 WL 293620
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Jason GORDON, Petitioner,
v.
Harold D. GRAHAM, Respondent.

No. 09–CV–1368 (CBA).
|
Jan. 31, 2012.

**Attorneys and Law Firms**

Jason Gordon, Auburn, NY, pro se.

New York State Attorney Generals Office, Queens County District Attorneys Office, Ellen C. Abbot, Queens, NY, for Respondent.

## MEMORANDUM & ORDER

AMON, Chief Judge.

**\*1** Jason Gordon, proceeding pro se, has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from his conviction and sentence for one count of Robbery in the First Degree, N.Y. Penal Law § 160.15(4), and two counts of Robbery in the Second Degree, N.Y. Penal Law §§ 160.10(1) and 160.10(2)(a). Gordon asserts two grounds for relief: (1) his constitutional rights were violated when the trial court interfered with defense counsel's questioning of the witnesses; (2) the evidence was legally insufficient to prove that the victim suffered a physical injury, as required for a conviction under N.Y. Penal Law § 160.10(2)(a). For the reasons that follow, the petition is denied.

## BACKGROUND

The evidence presented at Gordon's trial in New York State Supreme Court, Queens County, established that at approximately 1:10am on September 3, 2003, Gordon and an accomplice (who was not apprehended) approached Luisa Herrera as she entered through the exterior, unlocked door to her apartment building. The unlocked door led to a hallway with fluorescent lighting, followed by a second door that led to the rest of the building. The second door required a key for entry.

The two men entered the hallway behind Herrera. Gordon grabbed Herrara's purse, which contained cash and credit cards. At some point during the robbery, Gordon threw Herrara to the ground and pressed a handgun against her head while his accomplice repeatedly yelled "shoot her." Gordon and his accomplice fled the apartment building with Herrara's purse.

Herrera got up from the floor and followed the two men out of the building. She watched them enter a car that was double-parked nearby. She specifically saw Gordon get into the driver's seat. Herrera saw the license plate number and phoned 911 and reported the license plate number to an operator. The police responded and offered to call an ambulance, but Herrera declined. The next morning, Herrara went to the emergency room due to pain.

Detective Brian Maguire interviewed Herrara and received a copy of the 911 tape. A New York State Department of Motor Vehicles check revealed that the vehicle was owned by and registered to Gordon. After searching for several weeks, Detective Maguire found and arrested Gordon. Gordon provided a written statement that described the robbery, admitted that he had been at the scene, and admitted that he drove away in his car. Herrera subsequently identified Gordon in a lineup as the individual who robbed her at gunpoint.

Gordon was charged with one count of Robbery in the First Degree, N.Y. Penal Law § 160.15(4), and two counts of Robbery in the Second Degree, N.Y. Penal Law §§ 160.10(1) and 160.10(2)(a). At trial, the government presented the testimony of Detective Maguire and Luisa Herrera. Gordon was convicted on all three counts and sentenced to fifteen years imprisonment on the first-degree robbery conviction and five years imprisonment on each of the second-degree robbery convictions, all to be served concurrently. He was also sentenced to a term of five years post-release supervision.

**\*2** Gordon, through counsel, appealed to the New York Supreme Court, Appellate Division, Second Department. He raised the same two claims for relief that he now raises in his federal habeas petition: (1) he was deprived of due process, his rights to present a defense, confrontation, and the effective

assistance of counsel when the court repeatedly curtailed defense counsel's questioning of the witnesses in a way that showed disdain for both counsel's performance and the theory of defense; and (2) the evidence was legally insufficient to prove that the complainant suffered a physical injury, as required to support Gordon's convictions for second-degree robbery under N.Y. Penal Law § 160.10(2)(a).

The Appellate Division affirmed Gordon's convictions and sentence. *People v. Gordon,* 47 A.D.3d 833, 849 N.Y.S.2d 168 (N.Y.App.2008). As to Gordon's judicial interference claim, the court stated only that Gordon's argument was "unpreserved for appellate review and, in any event, is without merit." *Id.* at 834, 849 N.Y.S.2d 168. As to the sufficiency of the evidence claim, the court found that it was also unpreserved for appellate review as Gordon failed to raise it before the trial court in his motion to dismiss. *Id.* The court also held that "the evidence, even in the absence of medical testimony, was legally sufficient to sustain a finding of 'impairment of physical condition or substantial pain' necessary to support a finding of physical injury." *Id.* (quoting N.Y. Penal Law § 10.00(9)). The Court of Appeals denied leave to appeal. *People v. Gordon,* 10 N.Y.3d 811, 857 N.Y.S.2d 45, 886 N.E.2d 810 (2008). Gordon subsequently filed this timely petition for a writ of habeas corpus.

## STANDARD OF REVIEW

A petitioner in state custody pursuant to a criminal judgment of a state court is entitled to federal habeas relief only if he can establish that he is being confined in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254.

Relevant here, claims that are presented to the state courts but denied on state procedural grounds are deemed procedurally defaulted and generally cannot support federal habeas relief. *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("an adequate and independent finding of procedural default will bar federal habeas review of the federal claim").

When a federal claim is properly presented to the state courts and adjudicated against the petitioner on the merits, a petitioner is only entitled to federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) if the state court decision "was contrary to, or involved an unreasonable application of, clearly established

federal law, as determined by the Supreme Court of the United States; or ... [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d) (1)-(2); *see also Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Henry v. Poole,* 409 F.3d 48, 67 (2d Cir.2005). The Supreme Court has explained the requirements of § 2254(d) as follows:

> **\*3** Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams,* 529 U.S. at 412–413.

## DISCUSSION

### I. Judicial interference

Gordon argues that the trial judge exhibited an attitude of disdain for the merits of the defense, which he displayed by interposing (and sustaining) exasperated objections to defense counsel's questions [1] and by improperly curtailing defense counsel's attempts to cast doubt on the credibility of the victim and her testimony. According to Gordon, this constituted excessive and biased judicial interference that deprived him of his due process rights, his right to present a defense, his right to confront the witnesses against him, and his right to effective assistance of counsel.

The Appellate Division found this claim "unpreserved for appellate review and, in any event, [ ] without merit." *People v. Gordon,* 47 A.D.3d at 834, 849 N.Y.S.2d 168. The Appellate Division's reliance on an independent and adequate state procedural ground precludes federal habeas review of this claim. *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see Corriolan*

*v. Phillips,* No. 04–CV–5476, 2008 WL 2622935, at *8 (E.D.N.Y. June 30, 2008) ("The Appellate Division explicitly held that defendant's claim that the trial court improperly interjected itself into the proceedings was unpreserved for appellate review. Because the court relied on an independent and adequate state procedural ground in rejecting the claim, this court will not review it."); *Robles v. Superintendent of Elmira Facility,* No. 07 Civ. 596, 2007 WL 2600857, at *2–3 (S.D.N.Y. Aug. 30, 2007) (declining to consider the petitioner's unpreserved claim of judicial interference). Gordon has failed to advance any argument regarding cause for the procedural default or suggesting that a fundamental miscarriage of justice would occur if his claim is not addressed, and thus the Court finds this claim barred by the procedural default doctrine. *Silent v. Perlmann,* No. 07–CV–4524, 2008 WL 5113418, at *7 (E.D.N.Y. Nov.15, 2008) (where "petitioner does not offer any information regarding cause for the default or a miscarriage of justice, the claim should be precluded").

Even assuming that Gordon's claim is not procedurally barred, the Appellate Division's determination that the claim lacks merit was not contrary to or an unreasonable application of clearly established federal law. The record does not support Gordon's contention that the trial court interfered with Gordon's right to present a defense, his right to confront the witnesses against him, or his right to effective assistance of counsel. The court permitted defense counsel to explore numerous issues during the cross-examination of Detective Maguire and Luisa Herrera without improperly curtailing the questioning. Defense counsel was permitted to confront Herrera with alleged prior inconsistent statements that she made regarding the number of perpetrators involved in the robbery, the identity of the individual with whom she was speaking to on her cell phone during the robbery, the sequence of events that occurred before and during the robbery, and the number of times defendant's accomplice yelled "shoot her." (Herrera Test. at pp. 252–253, 257–258, 259–260, 262, 263, 264.) The court permitted defense counsel to cross-examine Herrera regarding the amount of time it took for her to get from her building to defendant's car after the robbery. (*Id.* at 267, 269–270.) Additionally, the court permitted petitioner to cross-examine Detective Maguire about the statement Gordon provided after he was arrested. (Maguire Test. at pp. 191–198.) The court limited defense counsel's questioning only when it became unduly repetitive or irrelevant.

*4 Nor does the record support Gordon's argument that the trial court improperly displayed an anti-defense bias by interposing objections *sua sponte* during defense counsel's examination of the witnesses. Although the court did impose its own objections, it did so during both defense counsel's and the prosecutor's witness examinations. (*See* Maguire Test. at 169; Herrera Test. at 207, 222). The court also overruled several of the government's objections to defense counsel's questions, (*see* Maguire Test. at 194; Herrera Test. at 251, 252, 258, 275.), and sustained several of defense counsel's objections to the prosecutor's questioning, (*see* Maguire Test. at 161; Herrera Test. at 208, 224).

Upon review of the trial record, this Court concludes that the trial judge did not commit any constitutional error by interfering with defense counsel's examination of the witnesses or by exhibiting an anti-defense bias. The trial court acted well within the bounds of its discretion in making the evidentiary rulings at issue. Accordingly, Gordon is not entitled to relief on this claim.

## II. Sufficiency of the evidence

Gordon's second claim is that the evidence adduced at trial was insufficient to support a conviction for second-degree robbery under New York Penal Law § 160.10(2)(a). Specifically, he argues that the evidence presented at trial was insufficient to support a finding that the victim, Luisa Herrera, suffered a physical injury. [2]

The Appellate Division rejected this claim as unpreserved for appellate review on the ground that Gordon failed to adequately raise it before the trial court. *Gordon,* 47 A.D.3d at 833–34, 849 N.Y.S.2d 168; *see People v. Williams,* 38 A.D.3d 576, 833 N.Y.S.2d 516 (N.Y.2007) ("The defendant's challenge to the legal sufficiency of the evidence to sustain his convictions is unpreserved for appellate review since defense counsel made only a general motion to dismiss the indictment and did not elaborate with specific facts or grounds the basis for dismissal."). Once again, the Appellate Division's reliance this independent and adequate state procedural ground precludes federal habeas review of this claim. *Rosenfield,* 820 F.2d at 54. Gordon has not made a showing of good cause sufficient to overcome this procedural bar.

The Appellate Division also held that, even if Gordon's sufficiency of the evidence claim were not procedurally barred, the evidence at trial was legally sufficient to support

Gordon's conviction. *Gordon,* 47 A.D.2d at 834. A petitioner "challenging the sufficiency of the evidence bears a very heavy burden." *Einaugler v. Supreme Court,* 109 F.3d 836, 840 (2d. Cir.1997). The Supreme Court recently reaffirmed the fundamental principle "that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith,* —U.S. —, —, 132 S.Ct. 2, 5, — L.Ed.2d —, — (2011). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id.; Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (holding that a petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt"). Moreover, this Court owes deference not only to the jury's verdict, but also to the Appellate Division's decision rejecting Gordon's challenge to the sufficiency of the evidence. *Cavazos,* 132 S.Ct. at 7 (reminding lower courts that a federal court may overturn a state court decision rejecting a sufficiency of the evidence challenge only if the state court decision was "objectively unreasonable").

**\*5** It was not objectively unreasonable for the Appellate Division to conclude that the evidence was legally sufficient to support a finding that Gordon caused physical injury to Herrera. Under New York Law "physical injury" is defined as "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00(9). "Although 'substantial pain' must be 'more than slight or trivial pain' it need not be 'severe or intense to be substantial.' " *People v. Rahman,* 84 A.D.3d 1119, 923 N.Y.S.2d 186, 187 (N.Y.App.Div.2011) (quoting *People v. Chiddick,* 8 Ny.Y.3d 445, 447 (N.Y.2007)). Herrera testified Gordon "threw [her] entire body" against the floor. (Herrera Test. at pp. 214, 217, 923 N.Y.S.2d 186.) She further testified, "I hit my hip really bad and my head." (*Id.*) When she was thrown to the floor, the two men were pulling for her purse. (*Id.*) She explained, "I was resisting that and that bruised my arm as well really badly." (*Id.*) As she got up and chased after the two men, her "hip was in a lot of pain" and her "head was hurting." (*Id.* at 214, 923 N.Y.S.2d 186.) When asked whether she lost consciousness, Herrera answered, "I was fully aware of everything that was going on. I was just in pain. I was in pain, in a lot of pain. I was aware but my hip was in a lot of pain." (*Id.* at 266, 923 N.Y.S.2d 186.) Herrera

stated that she was limping when she went after the men and took down the license place. (*Id.* at 274, 923 N.Y.S.2d 186.)

Gordon emphasizes that Herrera declined medical attention on the night of the crime, received only Tylenol for her pain at the hospital the next day, had no broken bones or external injuries, returned to work a few days later, and required no follow-up treatment. However, these facts do not negate a finding that Herrara was in a substantial amount of pain. *See People v. Hodge,* 83 A.D.3d 594, 921 N.Y.S.2d 71, 72 (N.Y.App.Div.2011) ("Minor injuries causing moderate pain may suffice, as may injuries that did not require any medical treatment.") (citation omitted). Herrera explained that she declined medical attention on the night of the incident because she "didn't want to be in a hospital feeling like this" and wanted to go home. (*Id.* at 221, 921 N.Y.S.2d 71.) She "didn't sleep that night" and "the next day [she] had a lot of pain and [she] had to go to the emergency room." (*Id.* at 221, 921 N.Y.S.2d 71.) Moreover, Herrera testified at trial that she continues to experience pain in her leg. (*Id.* at 222, 921 N.Y.S.2d 71.)

Based on this testimony, a rational juror could conclude that Gordon caused physical injury to Herrera when he threw her to the ground during the robbery. Accordingly, Gordon is not entitled to relief on this claim.

## CONCLUSION

The petition is denied. No certificate of appealability shall issue because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of Court is directed to enter judgment and to close this case.

**\*6** SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 293620

Footnotes

1    Gordon emphasizes that the trial judge imposed objections by repeating "sustained, sustained, sustained, sustained" (*see, e.g.,* Herrera Test. at 236, 263–64), or by asking questions such as "Is this relevant to anything?" (*id.* at 239).

2    Under New York Penal Law § 160.10(2)(a), a person "is guilty of robbery in the second degree when he forcibly steals property and when ... [i]n the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime ... [c]auses physical injury to any person who is not a participant in the crime."

---

2008 WL 2559372
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Akeem BROWN, Petitioner,
v.
Israel RIVERA, Respondent.

Civ. No. 9:05-CV-1478 (RFT).
|
June 23, 2008.

**Attorneys and Law Firms**

Akeem Brown, Gouverneur, N.Y., pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Frederick H. Wen, Esq., Assistant Attorney
General, of Counsel, New York, N.Y., for Respondent.

***MEMORANDUM-DECISION AND ORDER*** [1]

RANDOLPH F. TREECE, United States Magistrate Judge.

**\*1** *Pro se* Petitioner Akeem Brown brings this Petition for
a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254, on
the grounds that (1) his guilty plea was involuntarily and
unintelligently made; and (2) his sentence was unduly harsh
and excessive. Dkt. No. 1, Pet. For the reasons that follow,
the Petition is **dismissed.**

# I. BACKGROUND

On April 5, 2002, Petitioner was charged with murder in the
second degree (N.Y. PENAL LAW § 125.25(1)), criminal
possession of a weapon in the second degree (N.Y. PENAL
LAW § 265.03(1)), and criminal possession of a weapon in
the third degree (N.Y. PENAL LAW § 265.02(4)), arising
from two separate incidents that occurred in January 2002.
State Ct. R. on Appeal (hereinafter "R."), Ex. A, Pet'r
Appellate Br. at p. 2. On May 30, 2002, Petitioner pleaded
guilty to one count of criminal possession of a weapon in
the second degree in exchange for a determinate prison
sentence of fifteen (15) years and three (3) years post-
release supervision, full satisfaction of all three charges, and
a promise from the prosecution that no charges would be

brought against Petitioner in an unindicted robbery case. R.,
Plea Hr'g Tr., dated May 30, 2002, at pp. 4-7. In accordance
with the plea, Petitioner was sentenced to fifteen (15) years
incarceration with three (3) years post-release supervision. R.,
Sentencing Tr., dated June 20, 2002, at p. 17.

Petitioner filed a direct appeal to the New York State Supreme
Court, Appellate Division, Fourth Department, on the same
grounds raised in this Petition, which was denied. *People
v. Brown,* 779 N.Y.S.2d 372 (App. Div., 4th Dep't 2004).
Petitioner's application for leave to appeal to the Court of
Appeals was also denied. *People v. Brown,* 818 N.E.2d 674
(N.Y.2004).

On July 29, 2004, Petitioner filed a motion to vacate his
conviction pursuant to N.Y. CRIM. PROC. L. § 440.10 on
the grounds that his plea was involuntarily and unintelligently
made due to ineffective assistance from his trial counsel. R.,
Ex. F, Pet'r Mot. to Vacate at p. 8. None of the ineffective
assistance of counsel claims raised in Petitioner's § 440
motion have been raised in the instant Petition. *See generally*
Pet. On September 19, 2002, the trial court denied Petitioner's
motion to vacate without a hearing. R., Ex. H, Order Denying
Pet'r § 440 Mot., dated Sept. 19, 2005, at p. 7. Petitioner did
not appeal the denial of his § 440 motion. Pet. at ¶¶ 14-21.

# II. DISCUSSION

## A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act
of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996)
("AEDPA"), a federal court may not grant habeas relief to a
state prisoner on a claim unless the state court adjudicated the
merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved
> an unreasonable application, of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or

> **\*2** 2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello,* 460 F.3d 238
(2d Cir.2006); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d

Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177-78 (2d Cir.2003); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997); *Rivera v. New York,* 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *see also DeBerry v. Portuondo,* 403 F.3d at 66; *Boyette v. LeFevre,* 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Williams* and *Francis S. v. Stone,* 221 F.3d 100, 108-09 (2d Cir.2000)).

### B. Independent and Adequate State Grounds

Federal *habeas* review of a state-court conviction is prohibited if a state court rested its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 728 (1991) (citations omitted); *see also Harris v. Reed,* 489 U.S. 255, 261-62 (1989); *Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995). "This rule applies whether the state law ground is substantive or procedural."

*Coleman v. Thompson,* 501 U.S. at 729 (citation omitted). The independent and adequate state ground doctrine is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of federal claims in a *habeas* petition. *Harris v. Reed,* 489 U.S. at 264 n. 10.

In the case at bar, the Appellate Division dismissed Petitioner's claim that his plea was involuntarily and unintelligently entered into because he had failed to preserve that claim by making a timely motion to withdraw his plea or vacate the judgment. [2] *People v.. Brown,* 779 N.Y.S.2d 372 (citing *People v. Lopez,* 525 N.E.2d 5, 6 (N.Y.1988)). New York's contemporaneous objection rule, codified as N.Y. CRIM. PROC. L. § 470.05(2), requires that in order to preserve a claim for appeal, a defendant must make his objection known at the time of a trial or proceeding, so as to give the trial court the opportunity to remedy its own errors. The Second Circuit Court of Appeals has "observed and deferred" to New York's contemporaneous objection rules as a bar to federal *habeas* review. *Garcia v. Lewis,* 188 F.3d 71, 79 (2d Cir.1999) (citing, *inter alia, Bossett v. Walker,* 41 F.3d 825, 829 n .2 (2d Cir.1994)); *see also Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) (violation of the contemporaneous objection rule is an adequate and independent state ground). It is clear that the Appellate Division based its denial of this claim on an adequate and independent state ground, and therefore, the federal claim was procedurally defaulted in state court. Accordingly, federal review is barred, unless Petitioner demonstrates cause for the default and resulting actual prejudice, or alternatively that failure to review the claim would result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. at 748-50. To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman v. Thompson,* 501 U.S. at 753, *Restrepo v. Kelly,* 178 F.3d 634, 639 (2d Cir.1999). Examples of external factors include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *Bossett v. Walker,* 41 F.3d at 829 (citing *Murray* ); *United States v. Helmsley,* 985 F.2d 1202, 1206 (2d Cir.1992).

**\*3** In his § 440 motion, Petitioner asserted several claims of ineffective assistance of counsel, however, none of those claims concerned his failure to preserve this involuntary plea

claim. *See* Pet'r Mot. to Vacate. Petitioner offers no other explanation or cause for his failure to preserve the claim in question. When a petitioner has failed to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice, since federal *habeas* relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985); *Long v. Lord,* 2006 WL 1977435, at \*6 (N.D.N.Y. Mar. 21, 2006).

Petitioner has also failed to demonstrate or even argue that failure to consider this claim would result in a fundamental miscarriage of justice, which "occurs only in those 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.' " *Rodriguez v. Mitchell,* 252 F.3d 191, 203 (2d Cir.2001) (quoting *McCleskey v. Zant,* 499 U.S. 467, 494 (1991). In light of Petitioner's multiple admissions, it is difficult to envision a meritorious claim of innocence with respect to his conviction on criminal possession of a weapon in the second degree. A person is guilty of criminal possession of a weapon in the second degree when he possesses a loaded firearm with intent to use the same unlawfully against another. N.Y. PENAL LAW § 265.03(3) (1998), *amended by* 2005 N.Y. SESS. LAWS 764 & 2006 N.Y. SESS. LAWS 742. Petitioner admitted in statements to police and in the instant Petition that he shot the victim, ostensibly with a loaded weapon, but claims he did so in self-defense. *See* Pet. at p. 21 & Plea Hr'g Tr. at p. 11 (Petitioner's trial attorney stated, "[Petitioner] kept a gun because that's the way he thought he needed to protect himself" and "[h]e's certainly going to pay a price because of the way he protected himself, the illegal handling of a gun."). Although intent is an element of criminal possession of a weapon in the second degree, under New York law the justification of self-defense does not apply to a crime based on illegal possession of a weapon. *Davis v. Strack,* 270 F.3d 111, 133-34 (2d Cir.2001) (citing, *inter alia, People v. Pons,* 68 N.Y.2d 264 (N.Y.1986)). Thus, Petitioner's admission that he illegally possessed and used a loaded firearm would have been dispositive on that charge. Therefore, our decision not to consider this claim would not result in a fundamental miscarriage of justice.

Even assuming, *arguendo,* that Petitioner's claim regarding the voluntariness and intelligence of his guilty plea was not procedurally barred, it would still fail. The Fifth Amendment requires guilty pleas to be voluntary and intelligent in order to withstand constitutional muster. *Brady v. United States,* 397 U.S. 742, 748 (1970). "To determine the

voluntariness of a plea, the court should consider all of the relevant circumstances, including the possibility of a heavier sentence following a guilty verdict after trial, the Defendant's previous contact with the criminal justice system, and whether the court addressed the defendant and explained his options." *Bello v. People,* 886 F.Supp. 1048, 1054 (W.D.N.Y.1995) (citing *Magee v. Romano,* 799 F.Supp. 269, 300 (E.D.N.Y.1992)). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970) (citations omitted). Courts will also look to see whether the plea was entered into with the advice of counsel. *United States v. Broce,* 488 U.S. 563, 572 (1989). When a petitioner who pleads guilty on the advice of counsel later attacks the voluntariness of that plea, the petitioner has the burden of proving (1) that counsel's advice deviated from the suitable range of competence expected of criminal lawyers, and (2) a reasonable probability that but for such deviation, he would not have pleaded guilty. *Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985) (citations omitted) (applying the *Strickland v. Washington,* 466 U.S. 668 (1984) standard to challenges to guilty pleas based on ineffective assistance of counsel).

**\*4** In this case, Petitioner asserts that his plea was defective "either because [he] did not understand the nature of the constitutional protections that he was waiving, or because he has such an incomplete understanding of the charge that his plea can not stand as an intelligent admission of guilt." [3] Pet. at p. 18. The following colloquy between Petitioner and the Honorable Anthony F. Aloi, County Count Judge, occurred at the plea hearing:

> THE COURT: And Mr. Brown, have you heard what he have just said here today? You're going to plead guilty to the second count of this indictment, Criminal Possession of a Weapon in the Second Degree, in violation of Penal Law 265 point on 3(1), and I've said to you based upon that plea-and that plea is in full satisfaction of the other counts of this indictment-that at time of sentence that I would sentence you to a determinate sentence of 15 years with a three year post release supervision period. Is that your understanding of how we're going to dispose of this matter?

> THE DEFENDANT: Yes.

> THE COURT: Have any other promises been made to you by anyone to induce you to make this plea

other than what I have said here and on the record? Any other promises made to you?

THE DEFENDANT: No.

MR. CIMINO: Well, Judge, there was another consideration-is that the People weren't going to prosecute him on an unindicted robbery case.

MR. O'DONNELL: That's correct, Your Honor.

THE COURT: That's part of this disposition, that's correct. Any other representations, Mr. Brown?

THE DEFENDANT: No.

THE COURT: All right. Do you understand, Mr. Brown, that you have an absolute right to a trial before me or before a jury, and by this plea you're going to waive that right? You do not want a trial of this matter, is that correct?

THE DEFENDANT: Correct.

THE COURT: Do you understand at that trial the People have an obligation to call witnesses against you, your lawyer has a right to cross-examine those witnesses. You have a right to call witnesses on your own behalf and to testify in your own behalf, and by this plea you're going to waive those rights. You do not want a trial and you do now want to exercise those rights, is that correct?

THE DEFENDANT: Correct.

THE COURT: You should also understand, Mr. Brown, that you're pleading guilty to a felony. If you get into any new felony trouble within the next ten years you must receive mandatory state imprisonment for mandatory periods of time. Do you understand that?

THE DEFENDANT: That's correct.

THE COURT: Any question about that?

THE DEFENDANT: No sir.

THE COURT: You should also understand, Mr. Brown, that your plea of guilty is equivalent to a verdict after trial. It's just as if I or the jury had heard all the evidence in your case and we have determined that the People have established beyond a reasonable doubt that you have, in fact, committed the crime of Criminal Possession of a Weapon in the Second Degree in violation of Penal Law 265.03(1). Your plea of guilty is equivalent to a verdict after trial. Do you understand that?

**\*5** THE DEFENDANT: Yes.

THE COURT: Any question about that?

THE DEFENDANT: No, sir.

THE COURT: Do you have any questions of your attorney or the Court at this time?

THE DEFENDANT: No.

THE COURT: You should also understand, Mr. Brown, that you have an absolute right to remain silent. By this plea I'm going to ask you to waive that right and you're going to admit to me you committed the crime. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Any question about that?

THE DEFENDANT: No.

THE COURT: The second count of Indictment 2002-0329-1 charges Akeem Brown with having committed the crime of Criminal Possession of a Weapon in the Second Degree in violation of Penal Law 265.03(1) in that it is alleged, Mr. Brown, that on or about the 17th day of January, 2002, at the City of Syracuse, in this county, that you possessed a loaded firearm intending to use the same unlawfully against Sean Trenton, to wit: A loaded 25 calibre [sic] semi-automatic handgun. Is that true?

THE DEFENDANT: Yes.

THE COURT: On that date and at that time you possessed that loaded firearm intending to use it unlawfully against that gentleman. Is that true?

THE DEFENDANT: Yes.

THE COURT: How do you plea then to the charge of Criminal Possession of a Weapon in the Second Degree in violation of Penal Law 265.03(1), how do you plead?

THE DEFENDANT: Guilty.

THE COURT: Based upon Akeem R. Brown's responses to my questions I find this plea of guilty is knowingly, intelligently and voluntarily made, and I'll accept your plea of guilty to that charge.

Plea Hr'g Tr. at pp. 3-7.

Statements made at a plea allocution carry " 'a strong presumption of verity.' " *United States v. Maher,* 108 F.3d 1513, 1530 (2d Cir.1997) (quoting *Blackledge v. Allison,* 431 U.S. 63, 74 (1977)). The transcript quoted above demonstrates that Petitioner was informed of the rights he was giving up and was told exactly what his sentence would be in return. Petitioner's claim that he did not fully understand or was not aware of the standard of proof the state would have had to meet on the murder charge is belied by the record. The prosecutor stated at the plea hearing that the plea bargain was being offered "in light of the very real issue of self defense [.]" *Id.* at p. 3. Thus, the prosecutor tacitly acknowledged in open court that the potential difficulty in obtaining a conviction on the murder charge was at least part of the impetus for offering the favorable plea that Petitioner accepted.

Petitioner was indicted on counts of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. He pleaded guilty to one count of criminal possession of a weapon in the second degree in exchange for a determinate prison sentence of fifteen (15) years and three (3) years post-release supervision and in full satisfaction of all three charges, as well as a promise from the prosecution that no charges would be brought against him in an unindicted robbery case. Had Petitioner gone to trial on all charges, he would have faced potential concurrent sentences of fifteen (15) to twenty-five (25) years on the second degree murder charge, N.Y. PENAL LAW §§ 125.25(1) & 70.00(2)(a), (3)(a)(i), and three and one-half (3.5) to fifteen (15) years on the criminal possession of a weapon in the second degree charge, N.Y. PENAL LAW §§ 265.03(1) & 70.02(3)(b), and in addition a consecutive term of two (2) to seven (7) years on the criminal possession of a weapon in the third degree charge, N.Y. PENAL LAW §§ 265.02(4) & 70.02(3)(c). This does not include any potential sentence on the unindicted robbery charge, which apparently involved the use of a loaded firearm. *See* Pet'r Mot. to Vacate at Ex. H, Stephen Lance Cimino, Esq. Affirm., dated May 5, 2003.

**\*6** The plea Petitioner accepted was therefore a favorable one, and we note that pleading guilty with the aim of limiting the possible penalty has no bearing on voluntariness nor on counsel's effectiveness. *North Carolina v. Alford,* 400 U.S. at 31.

Therefore, because this claim is procedurally barred and without merit, it is **dismissed.**

### C. Harsh and Excessive Sentence

Brown claims that the fifteen (15) year sentence he received as part of his plea bargain was unduly harsh and excessive. Pet. at Ground Two. Succinctly, Petitioner asserts that the trial court erred because instead of focusing on his character at sentencing, it focused instead on the larger problem of handguns in our society. *Id.*

It is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citation omitted); *Mayerhofer v. Bennett,* 2007 WL 1624767, at \*7 (N.D.N.Y. June 6, 2007). Here, Petitioner was convicted of criminal possession of a weapon in the second degree, a class C felony that carries a potential determinate sentence of three and one-half (3½) to fifteen (15) years incarceration. N.Y. PENAL LAW §§ 265.03(1), 70.02(1)(b) & (3)(b). In accordance with the plea bargain, Judge Aloi sentenced Petitioner to the maximum fifteen (15) year sentence with three (3) years mandatory post-release supervision. *See supra* Part II.B. Since the imposed sentence was within the statutory range, this theory cannot afford Petitioner relief.

Petitioner's argument that the trial court did not take into account his personal character traits and instead focused on the threat of handguns to society in general is similarly unavailing. The record clearly shows that the plea bargain was contingent upon Judge Aloi's agreement to sentence Petitioner to the maximum fifteen (15) year sentence. Plea Hr'g Tr. at p. 3. The terms of that agreement, which satisfied all three charges and an additional unindicted robbery charge, were made clear at the Plea Hearing. *Id* . at pp. 3-7. That Judge Aloi took a moment during sentencing to lament the pervasiveness of gun violence in our society does not demonstrate that Petitioner was being punished for the unlawful acts of others.

Finally, to the extent that Petitioner's claim could arguably be viewed as a challenge under the Eighth Amendment's prohibition of cruel and unusual punishment, that claim also fails. The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. *Lockyer v. Andrade,* 538 U.S. 63, 72-73 (2003); *Harmelin v. Michigan,* 501 U.S. 957, 995 (1991). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle,* 445 U.S. 263, 271 (1980). For example, the Supreme Court has held that, for offenses less than manslaughter, sentences longer than twenty-five (25) years are not grossly disproportionate. *See Ewing v. California,* 538 U.S. 11 (2003) (25 years to life for grand theft) (cited in *Staubitz v. Lord,* 2006 WL 3490335, at *2 (E.D.N.Y. Dec. 1, 2006)) & *Harmelin v. Michigan,* 501 U.S. at 995 (life in prison without the possibility of parole for cocaine possession). Petitioner's sentence was not contrary to or an unreasonable application of that precedent. *See Long v. Lord,* 2006 WL 1977435, at *14 (N.D.N.Y. Mar. 21, 2006) (sentences within state limits "are simply not cruel and unusual punishment in the constitutional sense.").

**\*7** Since the sentence imposed was plainly within the limits authorized by state statute, and was not grossly disproportionate to the crime of conviction, this ground of the Petition is **denied.**

## III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED,** that the Petition for a Writ of *Habeas Corpus* be **DENIED;** and it is further

**ORDERED,** that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000); and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

## All Citations

Not Reported in F.Supp.2d, 2008 WL 2559372

Footnotes

1   Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule 72.2, the parties consented to this Court presiding over all matters. Dkt. No. 11.

2   We note that Petitioner's § 440 motion was filed subsequent to his direct appeal. *See supra* Part I.

3   We note again that the instant Petition does not include the ineffective assistance of counsel claims raised in Petitioner's § 440 motion. *See generally* Pet. However, even if Petitioner had asserted those grounds for relief, they would likely be deemed exhausted but procedurally barred because Petitioner did not appeal the trial court's denial of his § 440 motion and his time to do so or seek an extension to file an appeal expired. Furthermore, Plaintiff's assertion that his failure to exhaust was caused by inadequate legal assistance at the prison, *see supra,* n. 2, does not state a valid justification. *See Garcia v. Laclair,* 2008 WL 801278, at *4 (S.D.N.Y. Mar. 24, 2008) ("[D]espite Petitioner's conclusory statement about ineffective assistance by a legal assistant at his correctional facility, Petitioner has not credibly demonstrated that there were any external factors preventing him from [exhausting his claim].").

© 2016 Thomson Reuters. No claim to original U.S. Government Works.